Argued January 6, affirmed February 19, 1969

# BURBAGE, *Appellant, v.* DEPARTMENT OF MOTOR VEHICLES, *Respondent.*

450 P. 2d 775

*Lewis B. Hampton,* Beaverton, argued the cause for appellant. With him on the brief were Myatt, Bolliger & Lewis.

*John Marandas*, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Before Perry, Chief Justice, and McAllister, Sloan, O'Connell, Goodwin, Denecke and Langtry, Justices.

LANGTRY, J. (Pro Tempore).

Petitioner was arrested for driving while under the influence of intoxicating liquor, ORS 483.992(2), by a state police officer, who, after observing the petitioner outside of his car at the scene of arrest, took him to a police station where the petitioner was requested by the officer to take a breathalyzer test as provided in ORS 483.634. The petitioner refused to take the test, and, after the officer followed statutory requirements, petitioner was notified of the suspension of his operator's license. He requested an administrative hearing pursuant to ORS 482.550, and from an adverse ruling therein he appealed to the circuit court. ORS 482.560. From an adverse jury finding in circuit court, and an order of license suspension made pursuant thereto, he has appealed.

The testimony was confusing and contradictory in many respects, but there was testimony from which the jury could conclude that at the time of arrest and also in the police station the petitioner was in an intoxicated condition and that he was informed of the rights he had under ORS 483.636 and 483.638. In the latter regard, the police officer testified that at least three times he read to the petitioner from a printed sheet an explanation of his rights and a warning of the consequence of refusal to take the breath test. The

printed sheet was received in evidence. It sets forth adequately and completely the requirements of ORS 483.638, including the following information: that the accused will be "* * * permitted upon request, at his own expense, reasonable opportunity to have any licensed * * * professional nurse or qualified technician, chemist or other qualified person of his own choosing administer a chemical test or tests for the purpose of determining the alcoholic content of his blood * * *." These are the exact words of the statute, which does not require the police officer to detail to the accused every type of chemical test that can be made under the law.

■ The petitioner was allowed to make two phone calls: the first was to his wife to have her get his attorney, which she did, and the second was in an attempt to get a nurse to come to the police station for the purpose of taking blood for a test. When he made the call for this purpose he again made it to his wife, but then he did not even talk to her about contacting the nurse.[1] In *Heer; Grayson v. Department of Motor Vehicles,* 252 Or 455, 450 P2d 533 (decided February 13, 1969), we held the Implied Consent Law to be constitutionally sound. ORS 482.540 to 482.580; 483.634 to 483.646. A review of the evidence in the instant case convinces us that petitioner was provided due process of law in accordance with these statutes.

The remaining assignments of error concern the conduct of the trial in circuit court. Petitioner's principal assignment of error in this regard is that he did not get the jury trial contemplated by the statute. ORS

---

[1] ORS 483.640 prohibits anyone except a duly licensed physician or a person acting under his direction or control from drawing blood for this purpose.

482.560 provides that "* * * trial in the circuit court shall be de novo and the appellant shall have the right to a jury as provided in criminal actions." The trial court instructed the jury that the Department of Motor Vehicles had the burden of proof by a preponderance of the evidence and that the verdict must be by at least a 10 to 2 majority. Petitioner claims that he was entitled to an instruction that the burden of the Department was to prove its case beyond a reasonable doubt and that the verdict must be unanimous. The Department claims that the court erred in putting any burden of proof upon the Department because the burden was upon the petitioner; that the quantum of proof was by a preponderance of the evidence; and that the verdict should be the same as in civil cases—that is, not less than a 9 to 3 majority.

■ In *Heer; Grayson,* supra, the first case to come before this court involving the Oregon Implied Consent Law, the circuit judge required the petitioners to go forward with the evidence. We affirmed that as the correct procedure and held that the burden of proof is upon the petitioner, citing *Lira v. Billings,* 196 Kan 726, 414 P2d 13 (1966), and *Buda v. Fulton,* 157 NW2d 336 (Iowa 1968). The latter case held that the trial judge in an implied consent law appeal de novo to the court was in error in holding that the burden of proof was upon the department. The Iowa court discussed the meaning of "de novo" in this context, said that the petitioner was the one taking the appeal, that as the appellant he necessarily made the affirmative allegations, and that the burden of proof follows the pleading. In this connection the Iowa Supreme Court cited our opinions in *Burkholder v. S.I.A.C.,* 242 Or 276, 281, 282, 409 P2d 342 (1965), and *Dimitroff v. State*

*Ind. Acc. Com.*, 209 Or 316, 321, 322, 306 P2d 398 (1957). A review of these Oregon cases indicates that the compensation act governing the procedure there specifically placed the burden of proof on the party appealing from the administrative ruling. Unfortunately, the statute does not explicitly allocate the burden in this case. Nevertheless, the more logical and workable rule, as we held in *Heer; Grayson, supra*, is that the petitioner who makes the affirmative allegations has the burden of proving them and must initiate the evidence. ORS 17.250(5).

*Buda v. Fulton, supra*, as already noted, holds that the quantum of evidence necessary to carry the burden of proof in a case of this nature is a preponderance of evidence. The Oregon statute applying to civil cases is the same. ORS 17.250(5). Cases from other jurisdictions, as we said in *Heer; Grayson, supra*, uniformly hold that this type of proceeding, in which the petitioner takes a de novo appeal from an administrative hearing to a circuit court, is civil in nature. Indeed, it is impossible to come to any other conclusion for no criminal penalty is possible. The question to be decided is whether the petitioner refused to give his consent under the requirements of the statute. If he did, his operator's license will be suspended for 90 days. There is no penalty or punishment except as this suspension may be such. In *State v. Robinson*, 235 Or 524, 385 P2d 754 (1963), we said at page 532:

> "* * * [N]or do we believe that the revocation of a driver's license is punishment or is intended to be punishment * * *."

The peculiar wording of ORS 482.560 ("the appellant shall have a right to a jury as provided in criminal actions") cannot mean that this proceeding is converted into a criminal action. These words simply

state that the appellant shall be entitled to *a jury* as provided in criminal actions, not to *a jury trial* as provided in criminal actions. As counsel points out in the answering brief, the right to such a jury logically means that he can have and select the jury as a defendant would do in a criminal case.[2] We hold that in all respects, other than the method of selection and the challenges available to each side, the jury trial shall be conducted as in any civil action. Accordingly, the number of jurors necessary to agree upon a verdict is the same as in other civil actions.

■ The trial court erred when it placed the burden of proof on the Department, and when it instructed that the verdict must be by at least a 10 to 2 majority. If it had not prevailed the Department would have had cause for appeal; however, the petitioner was not prejudiced; hence, there is no reason for reversal.

■ Several other assignments of error involve denied motions for mistrial. We have examined each of them, and find that where the motions were based on cause the causes were timely corrected by appropriate instructions to the jury by the trial judge. The petitioner could not have been prejudiced by any such rulings and he had a fair trial.

Judgment affirmed.

---

[2] An examination of the legislative archives available affords no information about the purpose the legislature had in mind when it added this language to the original bill.