Argued March 25, reversed April 20, 1977

CAPRETTA, *Respondent,*
*v.*
MOTOR VEHICLES DIVISION, *Appellant.*
(No. 36569, CA 6961)
562 P2d 1236

Al J. Laue, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

James M. Gillis, Newport, argued the cause for respondent. With him on the brief was Litchfield, Macpherson & Carstens, Newport.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

TANZER, J.

Thornton, J., specially concurring opinion.

## TANZER, J.

This is an appeal by the Motor Vehicles Division of the Department of Transportation from a circuit court order reversing an order of the Division suspending petitioner's operator's license for having refused to take a breathalyzer test as required by ORS 487.805(2) of the Implied Consent Law.

Petitioner was arrested for driving under the influence at approximately 4:15 p.m. He was transported to the Lincoln County Jail. During the ride to the jail he requested counsel. The officer and petitioner arrived at the jail at approximately 5 p.m. After a wait of approximately a half hour, the officer and the petitioner entered the booking room and at approximately 5:30 p.m. a call was placed to counsel. Somewhere between five and fifteen minutes later counsel arrived. The following statement by petitioner's counsel is an accurate report of the events following counsel's arrival:

> "* * * Officer Deserano said he wished to administer the breath test, that he was prepared to do so, and I said I would like to speak with the defendant for a few minutes first. He said, 'No, I can't do that,' and I said, 'Well, I'd like to talk to him before he takes the test.' And he says, 'I cannot let him out of my sight. I'm in control of the situation. If the test cannot be administered the way I want it to be, then I'll have to write it up as a refusal.' I said, 'I would just like to talk to him briefly for a few minutes. I will assure you that he will not take anything by mouth.' He said, 'I can't let him out of my sight, I will go in another corner of the room and plug my ears or something and you can talk to him.' I said, 'I would prefer to talk to him privately.' Then there was some colloquy on the tape, which actually took place when the officer asked him if he would submit to a breath test, and he said that he would submit to a breath test if he could talk to his attorney first. And I reiterated to the officer that yes, he would submit to a breath test if he could talk to me for a few minutes first. The officer said that had to be a refusal because he had to observe him and keep him

within his observation, and so he said, 'We will have to write this up as a refusal, then, Gordon.' And I said okay.
\* \* \*"

The officer was acting in apparent compliance with the Health Division rules which require:

"The operator must make certain the subject has not taken anything by mouth (drinking, smoking, eating, taking medications, etc.) vomited, or regurgitated liquid from his stomach into his mouth for at least fifteen minutes before taking the test." OAR 333-13-020(1)(b) and 333-13-022(1)(b).

The trial court held that the refusal to take the test until after unobserved conference with counsel did not constitute a refusal under the statute. We have held to the contrary. In *Lundquist v. Motor Vehicles Div.,* 23 Or App 507, 543 P2d 29 (1975), we held that there was no constitutional right to counsel in these civil proceedings, and that a refusal to take the breath test until after a conference with counsel was a refusal within the meaning of the Implied Consent Law. As in the earlier cases of *Cavagnaro v. Motor Veh. Div.,* 19 Or App 725, 728-29, 528 P2d 1090 (1974), and *Stratikos v. Dept. of Motor Vehicles,* 4 Or App 313, 315-16, 477 P2d 237, 478 P2d 654 (1970), *rev den* (1971), we quoted with approval the observation from *State v. Pandoli,* 109 NJ Super 1, 4, 262 A2d 41 (1970), that

"\* \* \* it is sensible to construe the statute to mean that anything substantially short of an unqualified, unequivocal assent to an officer's request that the arrested motorist take the test constitutes a refusal to do so. \* \* \* The occasion is not one for debate, maneuver or negotiation, but rather for a simple 'yes' or 'no' to the officer's request."

The trial court distinguished the *Lundquist* case on the ground that counsel was present here at the time of the refusal. Whether counsel is available at the station or at the other end of a telephone line is not a pertinent distinction. This case presents no issue of denial of counsel because the police facilitated access

[ 244 ]

to counsel. Thus we need not address thorny constitutional and exclusionary principles. The issue here is whether petitioner's insistence upon isolated access to counsel must take precedence over the need of the police to maintain control of the testing situation. Petitioner's insistence, through his lawyer, upon leaving the visual as well as the aural observation of the officer during the period of the tests to confer with counsel, gives us no cause to depart from our firmly established rule that a failure to assent upon request is a refusal under ORS 487.805(2).

Reversed.

**THORNTON, J.,** specially concurring.

I disagree with the rationale of the prevailing opinion but nevertheless concur in the result reached, although for a different reason.

The prevailing opinion is based upon prior holdings of this court in *Lundquist v. Motor Vehicles Div.,* 23 Or App 507, 543 P2d 29 (1975); *Cavagnaro v. Motor Veh. Div.,* 19 Or App 725, 528 P2d 1090 (1974); and *Stratikos v. Dept. of Motor Vehicles,* 4 Or App 313, 477 P2d 237, 478 P2d 654 (1970), Sup Ct *review denied* (1971). The fundamental premise on which those decisions was based is that Implied Consent Law proceedings are purely civil in nature, and that an arrested motorist is therefore not entitled to consult with his attorney before taking the breathalyzer test.

Upon further study of this issue, I am of the opinion that the conclusion we reached in *Stratikos* and *Lundquist,* namely, that the Implied Consent Law process is wholly civil in nature and therefore without any penal or criminal implications, was in error.

Briefly stated, my reasoning is as follows: It is true that under our Implied Consent Law the breathalyzer test is a step in a civil administrative proceeding. By the same token, however, it is also a step in a criminal

prosecution for DUIL: (1) the motorist is already under arrest for DUIL; (2) the results of the test, and anything he says or does during the course of it, can be used against him in the DUIL prosecution.[1] In view of the criminal prosecution facing such arrestee, I believe that due process of law requires that if he makes a timely request he should be permitted to have the benefit of his attorney's advice as to whether he should take the test or refuse it.[2]

Contrary to the rule announced in *Stratikos* and reaffirmed in *Lundquist* (by expressly adopting the rule of *State v. Pandoli,* 109 NJ Super 1, 262 A2d 41 (1970)), it is my opinion that where a motorist has been arrested for driving while under the influence of intoxicating liquor, the police must, as a matter of due process of law, accede to a timely request by the arrestee to consult with his attorney in person or by telephone before deciding whether to submit to or refuse the breathalyzer test. US Const, Amend V, VI, XIV; *Prideaux v. State, Dept. of Public Safety,* —— Minn ——, 247 NW2d 385 (1976). This consultation, however, may not unreasonably delay the test and thus frustrate its purpose. Further, I would hold that whenever physically possible, this right should be afforded the suspect out of the hearing of the police, provided, however, that the police are able to maintain their required visual surveillance of the suspect at all times as required by OAR 333-13-020(1)(b).

Directly in point on the privacy issue is *State v. Kneisl,* — Minn —, 251 NW2d 645 (1977). In *Kneisl* the Minnesota Supreme Court held that a motorist

---

[1] Under Oregon's new traffic code the first arrest for DUIL is deemed a "traffic infraction" and not a crime. The penalty on such conviction is a fine only. But a second or subsequent conviction within five years constitutes a Class A misdemeanor. The penalty here may include a maximum fine of $1,000, up to one year in jail, or both.

[2] It is noteworthy that in the case at bar the police apparently called defendant's attorney at defendant's request. The attorney came to police headquarters immediately, but the attorney-client conference was presumably aborted when defendant's attorney refused to confer with defendant unless the conference could take place in a private area.

arrested for DUIL is entitled not only to the telephone conversation with his attorney, which was the point in issue in *Prideaux v. State, Dept. of Public Safety, supra,* he is also entitled to a private interview at the police station if

> "* * * security permits and a private room is available * * *. If such a facility is unavailable or impermissible under the circumstances, counsel should be allowed to confer with his client out of the earshot of others in the room. None of this conversation between the attorney and his client can be used against the defendant, no matter how obtained, unless the defendant agrees to the introduction of such evidence. * * *"

The crucial reason why defendant cannot prevail in the case at bar in my view is that he failed to establish that the private consultation he requested could readily have been afforded him while he was physically within the direct view of the police as required by the above cited regulation. Absent a satisfactory showing by defendant that this type of limited privacy could have been afforded him, I reach the same result as does the majority, namely, that the trial court's decision must be reversed.

A similar issue was presented in another Minnesota case, *State, Dept. of Public Safety v. Held,* —— Minn ——, 246 NW2d 863 (1976). In *Held* the arrested motorist insisted that he be permitted to telephone his attorney from a private booth or room. In rejecting this contention the court stated:

> "* * * Bearing in mind that many police departments may not have private phone booths or rooms suitable for such use, and the potential security problems involved, we decline to impose such a requirement. We believe that the driver's rights are sufficiently safeguarded by a rule which forbids the use in evidence of any statements made by defendant to his counsel over the telephone which are overheard by police. Such a rule fully satisfies the privacy requirement of Minn. St. 481.10, the provision on which the *Prideaux* decision was based." —— Minn ——, 246 NW2d at 864.