STATE OF OREGON, *Respondent,*
*v.*
BRIAN LEONARD SMYTH, *Petitioner.*
(No. TC 38440, CA 9205, SC 25860)

593 P2d 1166

Gary L. Hooper, Deputy Public Defender, Salem, argued the cause for petitioner. With him on the brief was Gary D. Babcock, Public Defender.

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Al J. Laue, Solicitor General.

LINDE, J.

**LINDE, J.**

Defendant was convicted of the offense of unauthorized use of a vehicle, ORS 164.135, upon a second trial, the first trial having resulted in a mistrial when the jury was unable to agree on a verdict. At the first trial, certain testimony was given by two witnesses from Calgary, Alberta, Canada, where the vehicle had been reported as stolen. The state made no effort to obtain the presence of these witnesses for the second trial. On the morning of the trial, the prosecution offered evidence that one of the men was in Canada and the other was on vacation either in Canada or in northern Minnesota. The trial court thereupon permitted the prosecution to introduce transcripts of the testimony of the two witnesses at the prior trial, over defendant's objection based on his right to confront the witnesses against him.[1] On appeal, the Court of Appeals rejected defendant's assignment of error on this issue with one dissent, 34 Or App 899, 580 P2d 559 (1978), and we allowed defendant's petition for review.[2]

The prosecution and the courts below considered the transcript of the first trial admissible in lieu of the

---

[1] Or Const art I, §11:

In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury . . . to meet the witnesses face to face . . . .

U S Const amend VI:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . to be confronted with the witnesses against him . . . .

The federal right of confrontation applies in state trials as part of due process under the 14th amendment. *Pointer v. Texas*, 380 US 400, 85 S Ct 1065, 13 L Ed 2d 923 (1965).

[2] The Court of Appeals remanded the case to the trial court on another issue. However, since the remand would not dispose of the important statutory and constitutional issue presented and might require a second appeal, we deemed it best to resolve that issue at this stage.

"face to face" testimony of the state's witnesses by virtue of the following provision of ORS 41.900:

> Evidence may be given of the following facts:
>
> . . . .
>
> (8) The testimony of a witness, deceased, or out of the state, or unable to testify, given in a former action, suit, or proceeding, or trial thereof, between the same parties, relating to the same matter.

Defendant's position, as stated above, is that if this section is construed to apply to the prior trial testimony of the absent prosecution witnesses in this case, it is unconstitutional under article I, section 11 of the Oregon Constitution, *supra* note 1, or under the federal fourteenth amendment.

It is, of course, a commonplace that statutes will not be construed to violate constitutional prohibitions unless no other construction is possible. *State v. Harmon*, 225 Or 571, 358 P2d 1048 (1961) and cases there cited. Courts do not readily ascribe to legislators an intention to deprive persons of a right that the constitution guarantees. With respect to ORS 41.900(8), we note at the outset that it is not self-evident that the provision for using prior trial transcripts in lieu of testimony in court was meant to cover criminal trials at all. The potential conflict between this statutory exception to the hearsay rule and the special constitutional guarantee of confrontation in criminal prosecutions must have been apparent when the statute was enacted in 1862, five years after the people of the Oregon Territory had approved the Bill of Rights, and legislators as well as courts may be credited with respecting well-understood constitutional rights and not intending every doubtful law to press to whatever extent that a court will not invalidate. However, the court has assumed that the statute does apply in criminal prosecutions. *State v. Crawley*, 242 Or 601, 410 P2d 1012 (1966), citing *State v. Meyers*, 59 Or 537, 117 P 818 (1911). *See also State v. Rawls*, 252 Or 556, 451 P2d 127 (1969); *State v. Von Klein*, 71 Or 159, 142 P 549 (1914); *State v. Walton,* 53 Or 557, 99 P

431, 100 P 389 (1909). Nevertheless, ORS 41.900(8) surely was meant to apply to criminal proceedings only so far as consistent with respecting the constitutional right of confrontation.

■ The defendant's right in a criminal prosecution "to meet the witnesses face to face" has been part of Oregon's Bill of Rights since 1859, nine years before the fourteenth amendment; textually, it is derived from the Massachusetts constitution of 1780, one of the original state Declarations of Rights, from which it found its way into the federal sixth amendment in 1789.[3] While our first obligation is to determine the law of Oregon before reaching the fourteenth amendment, *see, e.g., Brown v. Multnomah County District Court*, 280 Or 95, 570 P2d 52 (1977); *State v. Classen*, 285 Or 221, 590 P2d 1198 (1979), the United States Supreme Court's interpretations of closely parallel federal texts often shed light on the application of Oregon's constitutional guarantees. *See, e.g., State v. Greene*, 285 Or 337, 591 P2d 1362 (1979); *State v. Florance*, 270 Or 169, 527 P2d 1202 (1974). In the present case the parties and the majority and minority in the Court of Appeals disagree about the light shed by the Supreme Court's opinions in *Barber v. Page*, 390 US 719, 88 S Ct 1318, 20 L Ed 2d 255 (1968) and *Mancusi v. Stubbs*, 408 US 204, 92 S Ct 2308, 33 L Ed 2d 293 (1972).[4]

---

[3] The sixth amendment's right "to be confronted with the witnesses against him" reflects the phrasing of the Virginia, Maryland, and other Revolutionary Declarations of Rights, while Oregon's phrasing appeared in the early constitutions of Massachusetts and New Hampshire. Pennsylvania and Delaware, whose 1776 Declarations of Rights had employed the "confrontation" clause, changed to the "face to face" formulation when they adopted new constitutions in 1790 and 1792, respectively. We do not suggest any difference in meaning between these phrases.

[4] Although reviewing the actions of state courts under the 14th amendment, these decisions deal with claims under the 6th amendment's confrontation clause encompassed by "due process of law." *See Pointer v. Texas*, 380 US 400, *supra*, note 1. The fact that *Barber* and *Mancusi* were state rather than federal prosecutions is relevant for other reasons discussed in the text.

■ In *Barber v. Page, supra*, the Court held that a defendant's right to confront a hostile witness was violated by introducing at trial a transcript of testimony given by an absent witness at a preliminary hearing, when the witness at the time of trial was incarcerated in a federal penitentiary in another state. The Supreme Court found that these circumstances did not fall within a recognized exception to the confrontation requirement allowing the use of testimony previously subject to cross-examination in case of necessity.[5] The Court pointed out that, even if the state could not compel his attendance by its own force, it had made no effort to obtain his attendance by the cooperation of the federal authorities or of a federal court. The Court announced this rule for the exception of unavoidable necessity: "In short, a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." 390 US at 724-725.

In *Mancusi v. Stubbs, supra*, the prosecution, before introducing the prior testimony of a witness at a second trial, had sent a subpoena to the state of his last known address. However, the witness had moved permanently to Sweden. Unlike the situation in *Barber*, no legal means were readily available to the state to secure the return of the witness from Sweden for the second trial. Under the circumstances, the Supreme Court held "that the predicate of unavailability was sufficiently stronger here than in *Barber* that a federal habeas corpus court was not warranted in upsetting the determination of the state trial court as to Holm's unavailability." 408 US at 212-213. *Mancusi* thus did not question the basic premise of *Barber v. Page, supra*, that a witness, if still alive, must be actually unavailable to the prosecution before his or her prior testimony may be used at a criminal trial in the face of the defendant's sixth amendment right to confront the witnesses against him.

[5] The Court cited 5 Wigmore, Evidence §§1395-1396, 1402 (3d ed 1950).

We do not read *Mancusi* to lay down a simple, mechanical rule that the prior testimony of a witness who has crossed the borders of the United States is ipso facto admissible without any further showing of his actual unavailability.[6] Absence from the United States simplifies the state's task insofar as the state need not pursue the legal means of compelling the witness to come to the state for the trial that were available in *Barber* and lacking in *Mancusi*, unless such means were to become available, but it does not relieve the prosecution from having to make any attempt whatever to obtain the testimony of the witness "face to face" with defendant at the trial. Such a mechanical rule would mean that a New York prosecutor must try to compel a witness to journey from Hawaii for a trial, or a Washington state prosecutor a witness from Florida, but neither need even invite a witness from Toronto, Ontario, or Vancouver, B.C., to make a short trip that he or she perhaps makes a dozen times a year. It would focus on the machinery of coercing involuntary attendance and ignore the practical fact that the witness may be quite willing to come for the trial, at least at the state's expense.[7] Rather, the Supreme Court's view of the sixth amendment, as applied to the states in these cases, appears to mean that the prosecution need not seek the involuntary attendance of a witness located beyond the reach of established legal means for securing that attendance, but that such a witness is not necessarily "unavailable" for purposes of the exception to the confrontation clause "unless the prosecutorial authorities have made a good-faith effort to obtain his [voluntary] presence at trial," *cf.* 390 US at 724-725.

---

[6] Moreover, it is relevant that *Mancusi* involved the effect of the sixth amendment not in a federal prosecution but, by way of the fourteenth amendment, in reviewing a state conviction on habeas corpus, because the United States might in fact have means to obtain the attendance of a witness from abroad that is not available to a state. *See* 408 US at 211-212.

[7] Taken literally, such a mechanical rule would also defeat the prosecution's case here, since it is not shown that one of the witnesses was not in fact on vacation within the United States.

[299]

■ Whether or not this understanding is correct, at least the right of a defendant in Oregon "to meet the witnesses face to face" demands no less. The fact that a defendant has had a prior opportunity to confront and to cross-examine an absent witness whose transcribed testimony is offered at trial is indispensable to the exception of unavoidable necessity, but it is not alone sufficient to justify it. The purpose of seeing and questioning the witness is not to satisfy the defendant; that could be arranged in various settings. Rather, it is inseparably linked to the right to trial by jury guaranteed in the same sentence of the Bill of Rights, as quoted *supra,* note 1. In our system a defendant is not tried on a dossier compiled in prior hearings, no matter how fairly and judiciously conducted. His guilt must be established at the trial by evidence that convinces a factfinder beyond a reasonable doubt. But the earlier opportunity to question the witness will often avail little when the jury at the trial sees neither the witness nor the effect of the cross-examination recorded in a cold transcript. As the United States Supreme Court stated in *Barber,* "[t]he right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness." 390 US at 725, repeated in *Mancusi,* 408 US at 211.[8]

■ As stated above, we think ORS 41.900(8) was meant to apply to criminal proceedings only so far as consistent with the constitutional right of confrontation.

---

[8] The Court also quoted from the 1895 decision that recognized an exception to the confrontation requirement when the witness had died since the first confrontation. There the Court referred to the object of the requirement to secure "a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States,* 156 US 237, 242-243, 15 S Ct 337, 39 L Ed 409 (1895), quoted at 390 US 721.

While the importance of the jury's observation of the witnesses was not given weight in the Oregon decisions cited above, we think the point stressed in *Mattox* is also the better view of Or Const art I, §11.

Where that right applies, the bald statement admitting the testimony of a witness "given in a former action, suit, or proceeding" must be read, in context with the adjoining references to a witness who is deceased or incapacitated, to refer to circumstances of genuine necessity. It does not mean to let the prosecution substitute a prior transcript for present "face to face" confrontation with the witness whenever that witness is "out of state," when there is no showing of necessity and the witness might in fact be available. In the present case it is conceded that the prosecution made no effort to have its witnesses return for the second trial, apparently relying on the fact of their Canadian addresses without more to get their previously transcribed testimony before the jury. But a showing of unavailability comparable to that of a deceased or incapacitated witness, as an exception to the right of confrontation, presupposes at least a good faith but unsuccessful effort to notify the witness and to request his attendance. Since that showing was not made, the trial court erred in permitting the prosecution to introduce the transcribed testimony from the earlier trial. Accordingly, defendant's conviction cannot stand. The case must be remanded for a new trial.

Reversed and remanded.

Tongue and Howell, JJ., concur in the result.