# STATE OF OREGON,
*Appellant - Cross-Respondent,*

*v.*

# RONALD ERVAN SPENCER,
*Respondent - Cross-Appellant.*

(85-60405; CA A38156)

728 P2d 566

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant - cross-respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Edmund J. Spinney, Eugene, argued the cause and filed the brief for respondent - cross-appellant.

Before Buttler, Presiding Judge, and Richardson and Rossman, Judges.

ROSSMAN, J.

Buttler, P. J., dissenting.

**ROSSMAN, J.**

The state appeals from a pretrial order suppressing evidence in a DUII case, and defendant cross-appeals.

The state seeks reversal of the trial court's ruling that a "Permit for Chemical Analysis of a Person's Breath," issued on September 24, 1980, to the police officer who conducted an Intoxilyzer breath test on defendant following his arrest for DUII, was inadmissible. The trial court ruled that the document, a certified copy of the original, was inadmissible, because it did not prove that the officer was certified to operate the Intoxilyzer machine when defendant's breath was analyzed in May, 1985. Because the court refused to admit the document, the state was unable to lay a foundation for admissibility of the breath test result. We reverse on the appeal.

On May 4, 1985, Deputy McMullen, of the Lane County Sheriff's Office, arrested defendant for DUII. He transported him to the Lane County jail, where he took a sample of defendant's breath, tested it and recorded the results. At the pretrial hearing, McMullen testified that he had been trained to operate the Intoxilyzer machine. The state offered a certified copy of his "Permit for Chemical Analysis of a Person's Breath" to show that he was qualified to operate the Intoxilyzer. The document bore a certification, dated August 22, 1984, that it was a true and correct copy of the original on file with the Oregon State Police Crime Laboratory; it showed that McMullen had been qualified since September 24, 1980. Defendant argued that, because the certification was in 1984, the document did not establish that the officer was still qualified when he administered the breath test on May 4, 1985, and was therefore inadmissible. The trial court agreed, and the permit was not admitted. The court sustained a defense objection when the state questioned the officer whether his permit had been revoked or terminated. The prosecution made an offer of proof, in which McMullen testified that, to the best of his knowledge, his permit had never been revoked or terminated. The state then laid the remainder of its foundation for admission of the breath test result, but it was not admitted because of the lack of proof of the officer's qualifications.

██ *Former* ORS 487.815[1] provided:

"(1)   Chemical analyses of the person's breath, * * * to be valid under ORS 487.545, shall be performed according to methods approved by the Health Division or the Department of State Police and by an individual possessing a valid permit to perform such analyses issued by the Health Division or the Department of State Police.

"* * * * *

"(3)   The Department of State Police shall:

"* * * * *

"(e)   Issue permits to individuals according to their qualifications. Permits shall be issued to police officers only upon satisfactory completion of the prescribed training course and written examination and the permit shall state the methods and equipment which the police officer is qualified to use. Permits shall be subject to termination or revocation at the discretion of the Department of State Police."

To lay a foundation for admission of a breath test result, the state must establish that the officer performing the test possessed a valid permit. Permits once issued continue without renewal or recertification, subject only to revocation or termination at the discretion of the Department of State Police. Defendant argues that proof that a permit was once issued says nothing about its validity at a later date, because it could have been revoked or terminated at any time. The certification by the State Crime Lab in August, 1984, shows at best that the permit was still valid in 1984, but does not prove anything about validity in 1985. The state argues that the 1984 certification is merely an authenticating event that does not go to proof of validity; it merely makes the document self-authenticating. The state asks us to apply the OEC 311(1)(w) presumption that "[a] thing once proved to exist continues as long as is usual with things of that nature."

██      First, we agree with the state that the 1984 certification is an authenticating event, not an event that bears on the

---

[1] *Former* ORS 487.815 was repealed by Or Laws 1983, ch 338, § 978 (effective January 1, 1986, Or Laws 1983, ch 338, § 981) and replaced by ORS 813.160, Or Laws 1983, ch 338, § 173, as amended by Or Laws 1985, ch 16, § 57, and Or Laws 1985, ch 337, § 2.

continuing validity of the permit. Second, it is unnecessary to apply a presumption that the permit, once issued, continues to be valid "as long as is usual" with permits. By statute, the permit has continuing validity unless it is revoked or terminated by the Department of State Police. Here, there was no evidence that McMullen's permit was no longer valid. If defendant had reason to doubt the validity of the permit, he could have questioned him or produced impeaching evidence.[2] That procedure does not, as defendant contends, impermissibly switch the burden of proof to the defendant. The state must establish its foundation, and the defendant may challenge that foundation in the same way any other evidence is challenged. Accordingly, we reverse the trial court's order suppressing the results of the breath test.

We now turn to the two issues raised by defendant on his cross-appeal.

First, he argues that the results of the breath test are inadmissible, because he was denied the opportunity to telephone his attorney before submitting to the test. The uncontroverted facts are that, after McMullen had taken defendant to the jail, he explained the potential consequences of refusal to submit to the breath test. Defendant asked the officer whether he had a right to call his attorney before deciding whether or not to submit to the test and was told that he did not. He then submitted to the breath test. Defendant testified that he had the name of an attorney and knew how to get in touch with him.

The issue here has been specifically addressed in *State v. Newton,* 291 Or 788, 636 P2d 393 (1981), and *State v. Scharf,* 288 Or 451, 605 P2d 690 (1980). In *Newton,* the court overruled its decision in *Scharf* and held that Intoxilyzer test results, taken after a defendant is told that he has no right to contact a lawyer before deciding whether to refuse to take the test, are admissible, notwithstanding that such denial is a

---

[2] We note that the state made an offer of proof after the trial court sustained defense objections to all questions concerning McMullen's original certification and the continuing validity of the permit. Because our holding makes any testimony regarding the status of the permit unnecessary, we do not consider whether the proffered testimony should have been admitted.

deprivation of certain rights of the defendant.[3] Here, as in both *Scharf* and *Newton,* there was no reason given for refusing to allow defendant to telephone a lawyer. Here, in contrast to *Newton,* there was evidence that defendant at least had the name of and knew how to contact a lawyer.

■     Although the Supreme Court in *Newton* decided against exclusion with the expectation that "the clarification of law in this opinion will be sufficient to cause a change in police practice and deter future similar conduct without the necessity of creating a new exclusionary rule," it also warned that, "[i]f repeated violation occurs * * *, we may consider resort to the exclusionary rule as a necessary means to deter future violations." *State v. Newton, supra,* 291 Or at 813. It appears that, five years after *Newton,* violations identified in that case continue; however, we are bound to allow admission of such evidence until the Supreme Court tells us otherwise by carrying out its threat of yesteryear. Accordingly, we hold that the breath test results are admissible.[4]

Second, defendant cross-appeals admission of the police officer's "Intoxilyzer Operator's Check List," which was completed by the officer as he administered the breath test. Defendant argues that it is inadmissible hearsay that the court erroneously admitted under OEC 803(8)(b).[5]

■     The checklist is hearsay under the definition of OEC 801(3): " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OEC 803(8)(b) provides that the prohibition against hearsay evidence does not apply to:

---

[3] The court did not agree about what rights were violated. Three members of the court thought that it was a deprivation of liberty without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States. The other four members held that, as decided in *Scharf,* it was a violation of the implied consent statute, which required a voluntary and informed choice to take or not to take the breath test. In any event, four judges agreed that, whatever the violation, exclusion of the evidence obtained from a breath test conducted after the violation is not subject to the exclusionary rule.

[4] Our last look at *Newton* was in *Bossingham v. Klamath Co.,* 81 Or App 399, 725 P2d 931 (1986), a civil action against Klamath County for alleged violations of the plaintiff's constitutional rights. There is nothing in *Bossingham* to aid our analysis here.

[5] The state's brief does not address this assignment of error.

> "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth:
>
> "* * * * *
>
> "(b)  Matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding however, in criminal cases matters observed by police officers and other law enforcement personnel * * *."

Thus, public records, including matters observed by persons with a duty to observe and report, are normally admissible as an exception to the hearsay rule. The rule also provides, however, that the exception does *not* apply to "matters observed by police officers and law enforcement personnel" in criminal cases. Defendant argues that the checklist should therefore be excluded as inadmissible hearsay. Oregon case law has interpreted OEC 803(8)(b) to allow admission of certificates of Intoxilyzer inspections despite the language of the rule, because they deal with purely ministerial observations in a context outside the adversarial context of an existing criminal investigation. *State v. Smith,* 66 Or App 703, 675 P2d 510 (1984). Defendant argues that the checklist is not purely ministerial, because it is within the context of an existing criminal investigation. We disagree. Although the observations recorded on the checklist are made in the course of a criminal investigation, they are still purely ministerial. The checklist allows only a check mark to indicate that each step of the procedure has been completed, along with a notation of the instrument reading indicating the blood alcohol level. There is no opportunity for the officer to editorialize on the process or on defendant's condition. It is a routine check-off of each step as it occurs. The checklist thus fits within the "purely ministerial observations" described in *Smith* and, accordingly, is admissible.

Reversed and remanded on appeal; affirmed on cross-appeal.

**BUTTLER, P. J.,** dissenting.

Five years have passed since the Supreme Court held in *State v. Newton,* 291 Or 788, 636 P2d 383 (1981), that police refusal to permit an arrestee to call his attorney is an unlawful restriction on personal liberty, unless the refusal is reasonably required for the police to perform their duties. As the majority

concedes, no explanation for the refusal was given here. 82 Or App at 362.

The court in *Newton* declined to suppress the results of the breathalyzer test for two reasons. First, there was no evidence that the defendant had a lawyer or that one was available. Here, as the majority concedes, there is such evidence. Second, suppression was not *required,* because the defendant had not been *denied* a constitutional right; there was only an unauthorized restriction of defendant's freedom to call counsel. Nevertheless, the court stated:

> "We may expect that the clarification of law in this opinion will be sufficient to cause a change in police practice and deter future similar conduct without the necessity of creating a new exclusionary rule. If repeated violation occurs, then as the United States Supreme Court did in *Mapp* [*v. Ohio,* 367 US 643, 81 S Ct 1684, 6 L Ed 2d 1081 (1961)] and Justice Goodwin warned in [*State v.*] *Shipley,* [232 Or 354, 375 P2d 237 (1962)], we may consider resort to the exclusionary rule as a necessary means to deter future violations."

The warning in *State v. Shipley, supra,* to which the court referred, is:

> "If those primarily charged with the duty of enforcing the law are unwilling or unable to discharge their duty in this respect, then the courts should not shrink from their duty." 232 Or at 366.

It is apparent that the court's clarification of the law and its warning have not been sufficient to deter all of those charged with enforcing the law from the unauthorized restriction of an arrestee's freedom to call counsel. Five years is long enough to achieve compliance. Accordingly, we should not shrink from our duty to suppress the evidence. The majority would leave it to the Supreme Court. I would take the court at its word and do what apparently is necessary to effect compliance.

Although I agree with the majority's disposition of the other issues presented, I would not reach them, because I would affirm the trial court's suppression of the breathalyzer test results for the reason urged in the cross-appeal. Therefore, I dissent.