731 P.2d 629

STATE of Arizona, Appellant,

v.

Mark Austin CROTTY, Appellee.

No. 1 CA–CR 9927.

Court of Appeals of Arizona,
Division 1, Department A.

Nov. 20, 1986.

Review Denied Jan. 28, 1987.

Thomas E. Collins, Maricopa Co. Atty. by Timothy L. Moulton, Deputy Co. Atty., Phoenix, for appellant.

Ross P. Lee, Maricopa Co. Public Defender by John W. Rood, III, Deputy Public Defender, Phoenix, for appellee.

OPINION

CONTRERAS, Judge.

Appellee Mark Austin Crotty was charged by information with violating A.R.S. § 28–692(A), driving while under the influence of intoxicating liquor (DWI) with two prior DWI convictions, and A.R.S. § 28–692(B), driving while there was 10 percent or more by weight of alcohol in his blood with two prior DWI convictions within five years of the present offense date. Appellee moved to dismiss or, in the alternative, to suppress the results of a breath test taken pursuant to A.R.S. § 28–692.03. The trial court granted the motion, dismissing the charge under A.R.S. § 28–692(B) and suppressing the breathalyzer reading. The state moved to dismiss the case without prejudice in order to appeal the trial court's ruling. An order dismissing the case without prejudice was entered and this appeal followed. The issue presented is whether the trial court erred in granting appellee's motion to dismiss based on the applicability of *Oshrin v. Coulter*, 142 Ariz. 109, 688 P.2d 1001 (1984). We conclude that *Oshrin* is substantively distinguishable from the present case and therefore not controlling. Accordingly, we reverse and remand with instructions to the trial court to reinstate the charges.

The relevant facts follow. Appellee was arrested on December 22, 1984, for driving

a motor vehicle while under the influence of intoxicating liquor. He was taken to the police station where he voluntarily submitted to a gas chromatograph intoximeter (GCI) breath sample test to determine his blood alcohol content. He also requested that a second sample be preserved for his own use pursuant to *Baca v. Smith*, 124 Ariz. 353, 604 P.2d 617 (1979). Following his release from jail, he obtained the second breath sample. Appellee, in response to a written notice he received when he was released from jail, appeared at the justice of the peace court in early January 1985 for a scheduled pretrial hearing. Since his name was not on the court docket for that day, he made inquiry of a lady behind the counter and was told it was a "scratch." Appellee was also told that "... evidence hasn't been presented or something and to go home...." A month and a half later appellee had not heard from the court and threw away the breath sample. The record discloses that on September 3, 1985, a complaint was filed in justice court charging appellee with felony DWI.[1] A summons was issued but was not served due to appellee's change in residence. On October 2, 1985, a warrant for appellee's arrest was issued by the justice of the peace and appellee was arrested on October 20, 1985. Following a November 25, 1985, hearing before a justice of the peace, appellee was held to answer before the superior court.

An information charging appellee with felony DWI was filed on December 5, 1985. On February 14, 1986, appellee filed a motion to dismiss or in the alternative to suppress the breath sample, arguing that his rights had been violated because the state had acted improperly and caused him to throw away his second sample. After an evidentiary hearing on the motion to dismiss, the trial court ruled that appellee's rights had been violated because he destroyed his second breath sample after having been told by a justice court clerk that a pretrial disposition conference scheduled in the matter had been "scratched." Believ-

ing that *Oshrin* controlled, the trial judge dismissed the charge under A.R.S. § 28–692(B) and also suppressed the breathalyzer reading. The trial court upon the state's motion entered an order dismissing the case without prejudice. The instant appeal followed.

The state argues that the trial court erred in granting appellee's motion to dismiss and motion to suppress because the fact pattern in this case is clearly distinguishable from that presented in *Oshrin*. In *Oshrin*, police officers told the defendant that the charges against him were dismissed or "scratched," returned his cash bond to him, released him from custody, and then destroyed the defendant's second breath sample before filing a formal complaint against him. Our supreme court held that the results of the breathalyzer test should have been suppressed because the police conduct in that case constituted "a denial of fundamental fairness shocking to a sense of justice and a denial of due process." 142 Ariz. at 111, 688 P.2d 1001. It is clear that no comparable police misconduct occurred here. Thus, we must decide whether absent the affirmatively misleading and "shocking" conduct present in *Oshrin*, the trial judge should have granted the motion to dismiss and suppress where there was no evidence presented suggesting bad faith or connivance on the part of the police.

It is well settled that the state:

may not unreasonably interfere with an accused's reasonable attempts to secure, at his own expense, a blood or other scientific test for the purpose of attempting to establish evidence of his sobriety at or near the crucial time under consideration.

*Smith v. Cada*, 114 Ariz. 510, 514, 562 P.2d 390, 394 (App.1977). *See also State ex rel. Webb v. City Court*, 25 Ariz.App. 214, 216, 542 P.2d 407, 408 (1975). The holdings in these cases are clearly directed towards prohibiting the state from frustrating a

---

**1.** It is noted that nearly nine months passed from the date of the conduct at issue until a complaint was filed. Inordinate delay of this

nature was soundly criticized by our Supreme Court in *Hinson v. Coulter*, 150 Ariz. 306, 723 P.2d 655 (1986).

defendant's "reasonable efforts" designed to produce probative evidence of his innocence. In the present case, it is necessary to determine whether any state action frustrated "reasonable" attempts by appellee to preserve probative evidence of his innocence of the charge of driving a motor vehicle while under the influence of intoxicating liquor. Assuming, since it is uncontroverted in the record before us, that a clerk at the justice court did tell appellee the case was "scratched," we must determine whether that statement, without more, "unreasonably" interfered with appellee's right to have his second sample tested. We conclude it did not. The second breath sample in this case was destroyed by appellee, not the police, and not as a result of any affirmative conduct on the part of the police or judicial system. By appellee's own testimony at the hearing on his motion to dismiss/suppress, he did not understand what "scratched" meant nor did he understand that the matter had been dismissed. He testified:

Q. Did you understand before you went in what a scratched hearing was?

A. No, I had no idea what "scratched" was.

Q. Did they explain to you what a scratched hearing was?

A. They told me that evidence hasn't been presented or something and to go home, so I did.

Q. Did you understand from what they told you that the matter was dismissed or taken care of at that point?

A. At that I point I didn't know what was going to happen. I was residing in the same residence and was waiting to hear some kind of correspondence from the Court, and I heard nothing. Subsequently later I got rid of the breathalyzer examination.

▆ The alleged statement by the court clerk stands in stark contrast to the "shocking" activity engaged in by the police in *Oshrin*. Although the trial court's factual determinations are entitled to great deference, the legal conclusions to be drawn from those facts are especially susceptible of appellate review. *Cf. State v. Winegar*, 147 Ariz. 440, 445, 711 P.2d 579, 584 (1985). The facts in *Oshrin* clearly supported a determination that the defendant could have "reasonably" assumed that there would *never* be any further charges brought against him. In this case, when told by a justice court employee that the matter was "scratched," appellee was also told that "... evidence hasn't been presented or something and to go home...." In this context appellee could not reasonably believe that the charges had been dismissed. Perhaps more significantly, he did not subsequently contact the justice court, the prosecutor's office, the police or private counsel to determine the status of his case although admittedly he waited to hear something from the court. He acted unilaterally in destroying his own breath sample.

▆ Before a defendant's conduct in destroying evidence in his possession can be permitted to prevent the state from proceeding against him in a criminal prosecution, we believe the burden rests with the defendant to prove that his actions were "reasonable" under the circumstances. Under the factual pattern presented in this case, it was incumbent upon appellee, at a minimum, to make further inquiry as to what the status of the charges against him was before deciding to destroy or dispose of potentially exculpatory evidence. This is particularly so where, by his own admission, appellee, when told the matter was "scratched," didn't know what was going to happen. We do not believe appellee's conduct under these circumstances can be deemed "reasonable" and, therefore, conclude that he has not carried his burden of proof.

Although the length of time which elapsed between the initial arrest and the formal charges filed against the defendant would, if it occurred today, require a dismissal, *Hinson v. Coulter*, 150 Ariz. 306, 723 P.2d 755 (1986), that case applies only

from the date of the issuance of the mandate.

Although we reverse and remand on the basis that *Oshrin* is not controlling in the factual context here presented, this decision should not be construed as our stamp of approval upon court personnel providing incomplete information to a person with a pending charge when the person makes an inquiry. When appellee was told that the matter had been "scratched", court personnel should have further informed appellee regarding the posture of the proceeding and what to expect. The term "scratched" has no uniform definitive meaning. It is a variable. From experience this court knows that such term has multiple meanings. The term "scratched" as used in justice court may and often does vary from the meaning as that term is employed by the superior court and the appellate courts. We further note that such variance is not only found at the different levels in our judicial hierarchy, it is also found within the same level. What the term means in a justice court in Phoenix may mean something entirely different in Prescott justice court. Accordingly, we firmly believe that when a term such as this is used, court personnel should provide the inquiring party with a more complete explanation of what is meant.

For the reasons stated, the order dismissing this case is reversed. The matter is remanded with instructions to the trial court to reinstate the charges against the defendant.

FROEB and BROOKS, JJ., concur.