LAYTON CITY, Plaintiff and
Respondent,

v.

Robert Joseph WATSON, Defendant
and Appellant.

No. 19793.

Supreme Court of Utah.

Feb. 10, 1987.

Rehearing Denied March 3, 1987.

David B. Havas, Ogden, for defendant
and appellant.

Mark E. Kleinfield, Layton, for plaintiff
and respondent.

DURHAM, Justice:

Defendant appeals from a conviction of
driving under the influence of alcohol. De-
fendant's essential argument in this appeal
is that the results of the breathalyzer test
administered to him should have been sup-
pressed. We affirm.

At approximately 12:30 a.m. on August
12, 1982, defendant was stopped by a Lay-
ton City police officer as defendant was
driving a friend home. The officer testi-
fied that he observed defendant's vehicle
weave and fluctuate in speed. The officer
stopped defendant's vehicle and asked de-
fendant to perform a field sobriety test
consisting of several tasks. Although de-
fendant was able to complete at least one
of the tasks satisfactorily, the officer testi-
fied that defendant had difficulty with sev-
eral others. Defendant was therefore ar-

rested, handcuffed, and taken to the Layton City Police Department, where he consented to take a breathalyzer test. The results of that test indicated a .16 percent blood alcohol content (BAC) level. At the time of defendant's breathalyzer test, it was unlawful to operate a motor vehicle in the state of Utah with a BAC of .10 percent or greater. U.C.A., 1953, § 41–6–44.2(a) (1981).[1]

On appeal, defendant challenges the admission of the breathalyzer results on several grounds. He claims that: (1) the breathalyzer results were admitted on insufficient foundation, (2) he was denied due process because of an alleged inaccuracy in Utah's breath testing program, and (3) he was denied a fair trial by the city's failure to preserve evidence in the form of a breath sample.

■ This Court lacks jurisdiction to consider defendant's contention about the adequacy of foundation. U.C.A., 1953, § 78–3–5 (Interim Supp.1981) permitted appeals to the district court from circuit court decisions and provided that the district court decisions on such appeals "shall be final except in cases involving a constitutional issue." [2] Defendant's challenge to the adequacy of foundation does not rise to the level of a constitutional issue; therefore, this Court cannot consider that challenge.

Defendant next argues that the way in which Utah's breath testing program is conducted permits inaccuracy to the extent that use of breath test results in driving-under-the-influence cases constitutes a denial of due process. Defendant bases this argument primarily on the testimony of an expert witness, Dr. Bryan Finkle. Dr. Finkle attacks the program on two grounds: (1) the state's failure to have the solution with which the machines are checked and

calibrated independently tested by an outside chemist, and (2) the state's failure to administer duplicate breath tests at the time the defendant is arrested. Dr. Finkle also suggests rechecking the calibration of the machine at the time a breath test is administered.

We have previously acknowledged, however, that there is "universal acceptance of the reliability of [breathalyzer] evidence." *Murray City v. Hall,* 663 P.2d 1314, 1320 (Utah 1983) (citation omitted). Further, the legislature has determined that the standard by which Utah's breath test program is to be administered shall be established by the commissioner of public safety and if those standards are found to have been satisfied, the results of a breath test are presumed to be valid. *See* U.C.A., 1953, § 41–6–44.3 (Rep.Vol.1981). In his argument, defendant is not asserting that the standards have not been satisfied; he is asserting that the standards themselves are deficient. In examining this argument, our review must be limited to a consideration of whether the claimed deficiencies are so serious as to constitute a violation of due process, i.e., the program is so deficient that it fails to "comport with prevailing notions of fundamental fairness." *California v. Trombetta,* 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413 (1984).

■ Having examined the procedures that defendant challenges, we find no deficiency of constitutional magnitude. There are ample reasons for not requiring repetitive breath tests, including the potential difficulties in getting the intoxicated individual to cooperate in performing the test several times. Moreover, if an officer administering the test has any qualms as to the accuracy of the test, he is free to administer further tests. Additionally, a

---

1. In 1983, the legislature amended this provision and lowered the BAC to .08 percent. U.C.A., 1953, § 41–6–44(1) (Supp.1986). Prior to that amendment, however, a BAC of .08 percent but less than .10 percent, gave rise to a "rebuttable presumption" of intoxication. *Murray City v. Hall,* 663 P.2d 1314, 1319 (Utah 1983).

2. Although U.C.A., 1953, § 78–3–5 (Interim Supp.1981) was in effect at the time the parties filed their briefs, it has since been repealed. This Court's jurisdiction is now defined by U.C.A., 1953, § 78–2–2 (Cum.Supp.1986).

defendant may obtain an independent chemical analysis to verify or impeach the accuracy of a test administered by the police. U.C.A., 1953, § 41–6–44.10(f). Finally, this Court has previously indicated that multiple testing is not required. *See State ex rel. K.K.H.*, 610 P.2d 849, 853 (Utah 1980).[3]

We similarly find no constitutional violation in the method of checking the machines by means of a solution prepared by the Utah Highway Patrol and not independently tested. After the solution is mixed, it is diluted to a specific alcohol content and that "working solution" is tested in a separate machine that has also been checked for proper operation by means of a device provided by the factory. The working solution is then used in the field to check and calibrate the breath testing machines in the various police departments by running the solution through a simulator that converts the solution to a breath equivalent. We find it significant, although it is not mentioned by the parties, that in checking the breath testing machines every month, each machine is checked at least three times, using two independently mixed solutions. Trooper Schiffman specifically testified that there are always two officers checking or maintaining each machine and that each officer mixes his own solution. The fact that two independent solutions are used to check each machine appears to us to provide a sufficient degree of reliability to dispel any constitutional concerns regarding the accuracy of the checking procedure. Further, even though an outside chemist is not used to test the solutions, the defense expert himself admitted that the mixing of the solutions could be properly accomplished by a high school chemistry student and that the state chemist assists in the preparation analysis of the working solution. On the basis of the foregoing, we cannot say that the procedure by which the breath testing machines are checked is so inaccurate as to be a violation of defendant's due process rights.

Defendant's final point is that he was denied a fair trial because the City failed to preserve a breath sample. In this argument, defendant relies primarily on a California case, *People v. Hitch*, 12 Cal.3d 641, 527 P.2d 361, 117 Cal.Rptr. 9 (1974), which involved preservation of a breathalyzer test ampoule. Nonetheless, defendant specifically asserts that the challenge he raises concerns the City's failure to obtain and preserve a *breath sample,* rather than the preservation of the *test ampoule,* and concedes that there are disputes within the scientific community regarding the feasibility of retesting an ampoule. Thus, defendant urges this Court to require, on federal due process grounds, that a separate breath sample be obtained from persons taking a breath test and that the sample then be preserved by the prosecution. Although devices have been designed for this purpose and several states employ those devices, the United States Supreme Court has specifically held "that the Due Process Clause of the Fourteenth Amendment does not require that law enforcement agencies preserve breath samples in order to introduce breath-analysis tests at trial." *California v. Trombetta*, 467 U.S. 479, 491, 104 S.Ct. 2528, 2535, 81 L.Ed.2d 413 (1984) (footnote omitted).[4]

---

3. Although *K.K.H.* involved a *blood test,* the defendant claimed that *State v. Baker*, 56 Wash.2d 846, 355 P.2d 806 (1960), which involved a *breathalyzer test,* required additional corroborating tests. The Court responded to that argument by concluding that *Baker* does not require "the performance of a series of confirming tests." *Id.* at 853, 355 P.2d 806.

4. Although *Trombetta* was based on a California procedure that has some additional safeguards, including duplicate testing, having found the methods currently used in this state to be consti-

tutionally adequate, we can find no justification for requiring preservation of a breath sample on a constitutional basis. This is not to say, however, that the preservation of breath samples should not be considered for pragmatic, rather than constitutional, reasons, i.e., to avoid disputes such as the one presented in this case regarding reliability and accuracy of breath tests. *See State v. Stewart*, 544 P.2d 477, 479 (Utah 1975) (it is advisable to retain all records and evidence until case is concluded).

**502**

In support of its holding, the Supreme Court stated that "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. at 2534. As to the first requirement, the Court stated that it was not likely that a breath sample would be exculpatory except in "a tiny fraction of cases." *Id.* As to the second requirement, the purpose of preserving the breath sample is to impeach the results of the breath test, and there are other methods by which such impeachment can be accomplished, i.e., defendants can challenge the reliability of breath tests without the use of a breath sample by establishing such things as problems in calibration, interference with the machine measurements, and errors in the administration of the test. *See id.* at 490, 104 S.Ct. at 2535. *See also City of Las Vegas v. O'Donnell*, 100 Nev. 491, 686 P.2d 228, 230 (1984) (only possible relevance of preserved breath sample would be for impeachment, which can be accomplished by other methods.) In this case, defendant attempted to do that by presenting evidence, primarily in the form of expert testimony, as to the possible deficiencies in checking and calibrating the machines and administering the test. That evidence, however, was not sufficient to convince the jury that the test result was not accurate and therefore defendant was not guilty, nor was it sufficient to persuade us that the approved methods employed by the state violate federal due process. Nonetheless, defendant would have us require that law enforcement agencies take a separate breath specimen and preserve that sample for possible use by the defense in attempting to challenge the breath test results. That we decline to do. We therefore hold that the City was not required by the federal Constitution to preserve a sample of defendant's breath.

The conviction is affirmed.

HALL, C.J., and STEWART, HOWE and ZIMMERMAN, JJ., concur.