**PROVO CITY,**
Plaintiff and Appellant,

v.

**Mary C. WERNER, Defendant
and Appellee.**

No. 900161–CA.

Court of Appeals of Utah.

April 11, 1991.

**470**

Vernon F. (Rick) Romney (argued), Provo, for plaintiff and appellant.

Michael J. Petro and Randy S. Kester (argued), Springville, for defendant and appellee.

Before BENCH, JACKSON and RUSSON, JJ.

## OPINION

BENCH, Judge:

Provo City brings this interlocutory appeal challenging the trial court's suppression of the results of a breath test administered by the police to defendant, Mary C. Werner. We reverse the order and remand the case.

Defendant was arrested for driving under the influence. When requested by the police to submit to a breath test, she refused, requesting a urine sample instead because she did not believe breath tests to be trustworthy. She was then informed that under Utah's Implied Consent Law, Utah Code Ann. § 41–6–44.10 (1988), she might lose her license if she did not submit to the test as requested. She was also informed that she had the right to obtain her own independent test administered by a physician of her choice and at her own expense after the police test.[1] Defendant then submitted to the police test.

The arrest report shows that defendant's breath was tested at 2:04 a.m. and that she received the *Miranda* warnings at 2:19 a.m. The arrest report also shows that she requested that her attorney, Mike Petro, be present. Defendant was given an opportunity to call her attorney but she declined, apparently due to the lateness of the hour. Defendant also did not ask to contact a physician or technician to assist her in obtaining an independent test.

At some time after the police conducted the breath test, defendant renewed her de-

---

1. The police officer read the following statement to defendant after she refused to submit to the test:

   If you refuse the test, it will not be given, however, I must warn you that if you refuse, your license or permit to drive a motor vehicle may be revoked for one year with no provision for a limited driver's license. After you have taken this test, you will be permitted to have a physician of your own choice administer a test at your own expense, in addition to the one I requested you to submit to, so long as it does not delay the test or tests requested by me. Upon your request, I will make available to you the results of the test if you take it.

mand for a urine test. One of the officers said, "we have a urine bottle, we can certainly give that to you and you can obtain your own sample, and have it analyzed it [sic] wherever you wish." Defendant took the bottle to the restroom and collected a sample. No instructions were given to her by the police as to how to collect the sample or preserve it so that it would be admissible at trial.

Upon release from the jail, defendant took her urine sample to the Utah Valley Regional Medical Center for analysis. The hospital refused to analyze the sample, citing the following reasons: 1) the sample was not accompanied by a chain of custody, 2) the sample was not labeled with the subject's name or time of collection, 3) the sample was not sealed when it arrived at the hospital, nor was there any evidence that it had ever been sealed.[2] After indicating to defendant that the hospital was declining to analyze the sample, the technician at the hospital offered to dispose of it because it would not be of any use to her. Defendant apparently consented and asked the technician to send a letter to her counsel explaining why the hospital would not analyze the sample.

Prior to trial, defendant moved to suppress the results of the breath test. She argued that Provo City could not introduce the results because she was unable to secure an independent urinalysis with which to challenge the test. The trial court ruled that the police had no affirmative duty to provide defendant any assistance with her independent test, but that once they cooperated by providing her with the "hardware" for the test, i.e., the bottle, they accepted a duty to also provide her with

adequate information on how to secure an admissible sample. The trial court then suppressed the breath test results because it believed that defendant had been denied her due process rights when the police failed to advise her as to how to properly exercise her statutory right to an independent test.

Provo City appeals the suppression of the test results and argues that under Utah Code Ann. § 41–6–44.10(6), the failure of the accused to secure an independent test cannot affect the admissibility of police evidence. Since questions of constitutional rights are questions of law, we give no deference to the trial court's conclusion that the police had a duty, as a matter of due process, to "adequately inform" defendant about how to properly collect an admissible sample. *See State v. Davis,* 787 P.2d 517, 519 (Utah Ct.App.1990).

## FAILURE TO OBTAIN AN INDEPENDENT TEST

Utah's implied consent law provides those who are accused of driving under the influence with the right to obtain an independent chemical test at their own expense.[3] The accused may then use the results of the independent test to challenge the accuracy of whatever test the police may have conducted. Subparagraph (b) of the statute expressly provides, however, that if the accused fails or is unable to obtain the independent test, the prosecution may still introduce the results of the test conducted by the police. We therefore recognize at the outset that the right afforded by Utah's implied consent law is the right to seek to obtain an independent test,

**2.** While hospitals and laboratories are free to establish their own proper criteria for accepting samples for analysis, it would appear that in this case the hospital applied strict standards formulated for samples intended for use by the police and prosecutors. Hospitals and laboratories might consider developing different standards for accepting samples from private individuals accused of driving under the influence.

**3.** Utah Code Ann. § 41–6–44.10(6) (1988) provides:

(a) The person to be tested may, at his own expense, have a physician of his own choice administer a chemical test in addition to the test or tests administered at the direction of the police officer.

(b) The failure or inability to obtain the additional test does not affect admissibility of the results of the test or tests taken at the direction of a peace officer, or preclude or delay the test or tests to be taken at the direction of a peace officer.

(c) The additional test shall be subsequent to the test or tests administered at the direction of the peace officer.

not an absolute right to obtain a test. *State v. Dressler*, 433 N.W.2d 549 (N.D.Ct. App.1988); *Fairfax v. Smith*, 330 S.E.2d 290 (S.C.1985).

Similarly, all that is required to provide due process is an opportunity to obtain an independent test. "The purpose of due process is to prevent fundamental unfairness, and one of its essential elements is the *opportunity* to defend." *State v. Snipes*, 478 S.W.2d 299, 303 (Mo.), *cert. denied*, 409 U.S. 979, 93 S.Ct. 332, 34 L.Ed.2d 242 (1972). "The issue is whether the defendant was afforded a reasonable opportunity to obtain an independent examination; it is not necessary that such an examination in fact be conducted." *Commonwealth v. Alano*, 388 Mass. 871, 448 N.E.2d 1122, 1127 (1983). *See also Bilbrey v. State*, 531 So.2d 27, 30 (Ala.Ct.App.1987) (defendant must prove by clear and convincing evidence that the conduct of the police was unreasonable in order to establish a due process violation).

The failure to obtain an independent test includes situations where the accused makes an inadequate effort to obtain a test. *State v. Crotty*, 152 Ariz. 264, 266, 731 P.2d 629, 631 (Ct.App.1986) (accused destroyed the breath sample without first contacting his attorney). "[I]t is the accused who must act to protect his interest, and it is only when he is denied an opportunity reasonable under the circumstances, to procure [an independent test] that he can properly claim a denial of due process." *In re Koehne*, 54 Cal.2d 757, 759, 8 Cal.Rptr. 435, 356 P.2d 179 (1960).

Defendant, not the police, was responsible for her failure to obtain a second test. The police provided her an adequate opportunity, but her efforts were inadequate. Defendant was given access to a telephone. She could have called her attorney or a physician for assistance in obtaining an independent test. She declined. Access to a telephone in order to arrange an independent test is typically sufficient to provide due process to an individual accused of driving under the influence. *See Bilbrey*, 531 So.2d at 29 (citing *Smith v. Cada*, 114 Ariz. 510, 562 P.2d 390 (1977)

(failure to permit accused an opportunity to call attorney violated statute and due process); *Alano*, 388 Mass. 871, 448 N.E.2d 1122 (1983) (police "need only inform [accused] of his rights and allow him access to a telephone"); *Snipes*, 478 S.W.2d 299 (accused was given the opportunity to call a physician and request that he come to the jail to examine him personally, it therefore was not a denial of due process for the police to refuse to transport accused to hospital); *State v. Magai*, 96 N.J.Super. 109, 232 A.2d 477, 479 (1967) (no violation occurred when accused was denied access to telephone because he refused to comply with logging requirement before making call)). *See also McCormick v. Municipal Court*, 195 Cal.App.2d 819, 16 Cal.Rptr. 211 (1961) (improper to permit accused only one call which was used to arrange bail when accused repeatedly requested opportunity to call physician); *Burbage v. Department of Motor Vehicles*, 252 Or. 486, 450 P.2d 775 (1969) (no violation when accused called his wife and did not arrange for a test); *State v. Reed*, 36 Wash.App. 193, 672 P.2d 1277, 1278 (1983) (refusal to take accused to hospital for blood test did not thwart accused's attempts to obtain a test since he was afforded access to telephone).

If defendant was not able to obtain an independent test because of the way the sample was collected, that failure was due to her own free choice not to seek advice before collecting the sample. *See State v. Miller*, 41 Or.App. 687, 598 P.2d 1262, 1263 (1979) (accused was afforded an opportunity to have his blood tested, and "exercised a free will choice not to do so"). Defendant, not the police, must live with her failure to do so.

Once she obtained the sample, defendant failed to obtain an analysis of the sample. The hospital she went to refused her request to analyze the sample because of concerns over the accuracy of any results when the sample was not collected in what the hospital considered a required manner. Rather than seeking an analysis at another hospital or laboratory, defendant consented to the disposal of the sample by the hospi-

tal. Defendant also could have inquired of legal counsel before permitting her sample to be destroyed. *Crotty*, 731 P.2d at 631. Again, defendant, not the police, must live with her failure to have the sample analyzed.

Defendant was unable to obtain an independent test, in part, because the hospital refused to analyze the sample. The police cannot be held responsible for the actions of third parties that cause an accused to be unable to obtain an independent test. " '[I]nability' to obtain a test refers to the situation where, for some reason independent of the conduct of either the arrestee or the police, such as loss of the blood sample by the hospital performing the test, an independent chemical analysis cannot be obtained." *State v. Hilditch*, 36 Or.App. 435, 584 P.2d 376, 378 (1988). *See, e.g., Grizzle v. State*, 153 Ga.App. 364, 265 S.E.2d 324 (1980) (hospital refused to analyze sample without police request which was not given, police had no duty to give any such request); *State v. Sawyer*, 26 N.C.App. 728, 217 S.E.2d 116, *cert. denied*, 288 N.C. 395, 218 S.E.2d 469 (1975) (hospital refused to analyze blood sample without arresting officer's authorization which was not given, police had no duty to give any such authorization). Section 41-6-44.-10(6)(b) expressly prevents properly conducted police tests from being rendered inadmissible by third-party actions such as the hospital's refusal to analyze defendant's sample.

## PURPORTED DUTY OF POLICE TO ASSIST

■ Defendant seeks to lay responsibility for her failure to exercise her right to an independent test at the feet of the police by claiming that they had a duty to assist her. "Law enforcement officers need not assist people in obtaining independent tests or even advise them of the right to an additional test. Law enforcement officers, however, 'must not prevent or hinder an individual's timely, reasonable attempts to obtain an independent examination.' " *Dressler*, 433 N.W.2d at 551 (quoting *Alano*, 388 Mass. 871, 448 N.E.2d at 1128)

(citations omitted). *See generally Bilbrey*, 531 So.2d at 29; *State v. Reyna*, 92 Idaho 669, 674, 448 P.2d 762, 767 (1968); *State v. Clark*, 234 Mont. 222, 762 P.2d 853 (1988); *Schroeder v. Department of Motor Vehicles*, 105 Nev. 179, 772 P.2d 1278, 1281 (1989); *State v. Hudes*, 128 N.J.Super. 589, 321 A.2d 275 (1974). *See also* Annotation, *Drunk Driving: Motorist's Right to Private Sobriety Test*, 45 A.L.R.4th 11 (1983).

The police did not have any constitutional duty to assist defendant in collecting potentially exculpatory evidence. In *Layton City v. Watson*, 733 P.2d 499 (Utah 1987), the Utah Supreme Court followed the United States Supreme Court's analysis in *California v. Trombetta*, 467 U.S. 479, 491, 104 S.Ct. 2528, 2535, 81 L.Ed.2d 413 (1984) (fourteenth amendment does not impose a duty upon police to obtain and preserve second breath sample in order to introduce breath analysis results at trial).[4] The Utah Supreme Court declined to "require that law enforcement agencies take a separate breath specimen and preserve that sample for possible use by the defense in attempting to challenge the breath test results." *Id.* at 502. If law enforcement agencies have no constitutional duty to collect a second breath sample that could be used to challenge the results of a breath test directly, we see no duty to assist in obtaining a totally separate chemical test to challenge the breath test results collaterally.

■ Absent a constitutional duty to assist, a police officer does not have any duty to assist in obtaining an independent test, unless police assistance is expressly required by statute. *See, e.g., Alano*, 388 Mass. 871, 448 N.E.2d 1122 (police had a statutory duty to inform accused of right to test, but no statutory duty to tell accused how to obtain a test once one was requested). *Winston v. Commonwealth*, 188 Va. 386, 49 S.E.2d 611, 614 (1948) (no statutory duty to assist the accused in engaging persons capable of assisting with the test). Utah's implied consent law does not require the police to notify defendant of the right to the test or to assist in

---

**4.** Both Provo City and defendant addressed whether the urine sample was "constitutionally

material" as that term is described in *Trombetta*, 467 U.S. at 491–92, 104 S.Ct. at 2535, and

obtaining the test. The police in the present case therefore had no statutory or constitutional duty to assist defendant.

### DUTY OF POLICE NOT TO INTERFERE

■ We next turn to the duty of the police to not frustrate or thwart reasonable attempts to obtain an independent test. *See, e.g., Reed,* 672 P.2d at 1278. "The results of chemical tests administered at the direction of law enforcement officers may be suppressed ... when a motorist is not afforded his statutory right to an independent test." *Dressler,* 433 N.W.2d at 551 (citations omitted). The justification for such a suppression is that by preventing an accused from obtaining an independent test, the police officer has unilaterally caused a de facto suppression of accused's potentially exculpatory evidence. *Cada,* 114 Ariz. 510, 562 P.2d 390.

> Where ... the arrestee does not obtain any independent test because he is denied a *reasonable* opportunity to do so by the police, there is neither a 'failure' nor an 'inability' to obtain a test under the statute.... To construe [the statute] in any other way ... would allow the police to profit from their own misconduct in preventing an arrestee from obtaining such a test.

*Hilditch,* 584 P.2d at 377.

Defendant, however, does not point to any action by the police officers that frustrated or thwarted her attempts to obtain a second test. The police did not prevent her from calling for help in obtaining the test, nor did they prevent her from collecting a sample. The police also did not cause defendant to destroy the sample she collected. Defendant fails to show any reasonable request that was denied by the police. Defendant's inadequate attempts to collect a sample and her unilateral destruction of

the evidence simply do not amount to interference by the police. *State v. Goodwin,* 160 Ariz. 366, 773 P.2d 471 (Ct.App.1989) (defendant, by his unilateral action, disposed of the breath sample); *Crotty,* 152 Ariz. 264, 731 P.2d 629 (police did not "interfere" when court personnel told the accused that pretrial had been cancelled and accused destroyed his breath sample).

■ Defendant nevertheless asserts, and the trial court agreed, that once the police attempted to facilitate her request for a urine test by providing her with a bottle, they accepted an affirmative duty to fully inform defendant as to how to collect and preserve the sample. The failure of the police to perform that duty, according to defendant, constituted interference with her statutory rights. We disagree.

■ Satisfaction by the police of their duty to cooperate with an accused's reasonable attempts to obtain a test cannot be manipulated into a duty to assist; even if the officer goes beyond the bare minimum of cooperation required as a matter of due process. In *State v. Goodwin,* 160 Ariz. 366, 773 P.2d 471, 472 (Ariz.Ct.App.1989) a police officer gave the accused a second breath sample and told him that he could have it tested after he left the jail. Under Arizona law, the police officer was only required to ask whether the accused wished that a second sample be preserved and to obtain a written waiver if no second sample was desired. He did not need to actually give a sample to the accused. Goodwin indicated to the officer that he did not want the sample and the officer told him that he could throw it away if he wished. Goodwin then stood up and threw the sample in the waste basket. The Arizona Court of Appeals held that the delivery of the sample to the accused was to the officer's credit since it was more than the law required, and that it was the accused

---

followed in *Watson,* 733 P.2d at 502. We do not find the "constitutionally material" test in *Trombetta* to be helpful since it deals with the *destruction* by the police of potentially exculpatory evidence, i.e., the breath sample tested, while we are addressing the question of unilateral de-

struction of potentially exculpatory evidence by a defendant. The relevant holding from *Trombetta* and *Watson* is that the police have no duty to assist in collecting or creating potentially exculpatory evidence.

who had a duty to make further inquiry before disposing of the potentially exculpatory evidence.

In the present case, defendant did not have a statutory or constitutional right to have the police provide her with a bottle in order to collect a urine sample; any additional test was to be conducted at her own expense. *See State v. Hatlestad*, 347 N.W.2d 843 (Minn.Ct.App.1984) (police had no duty to provide blood sample kit). The fact that a police officer attempted to facilitate her request as a courtesy should not render the police responsible for the manner in which she collects the sample or her failure to effectively pursue an analysis of that sample.

Handing defendant the bottle while telling her she could collect her own sample and have it analyzed later is similar to the gratuitous advice offered in *State v. Miller*, 41 Or.App. 687, 598 P.2d 1262 (1979). Miller requested a blood test from a local hospital at approximately 4:00 a.m. The police were willing to transport him to the hospital but it was discovered that the hospital would not conduct a test unless he could pay in cash or with a credit card. He had neither. A friend brought bail money for Miller and the officer again asked if he wished to be taken to the hospital. Miller declined, saying that he would take the blood test "in the morning." The officer responded that a test obtained "in the morning" would be of no value because the alcohol in his blood would have dissipated. Miller was released on bail at approximately 5:00 a.m. but did not go to the hospital. He believed, based upon the statements of the officer, that a test at that time would be of no value. At trial, Miller sought to suppress the breathalyzer test conducted by the police claiming that he had been denied a reasonable opportunity to obtain an independent blood test due to the officer's statement. The Oregon court of appeals held that the police test results were admissible. Miller had an opportunity to obtain a blood test when he left the jail and "[h]e exercised his own free will choice not to do so." *Id.* 598 P.2d at 1263. The court reasoned that the officer's statement, even if it had unintentionally misled the accused, was not affirmative action that denied the accused an opportunity to obtain an independent test. *Id.* Similarly, in the case before us, the offering of a bottle with which to collect a urine sample simply was not affirmative action that denied defendant an opportunity to obtain an independent test.

■ When police facilitate reasonable requests for an independent test, they do not become responsible for the completion and admissibility of the test. The imposition of such a duty and responsibility would have a chilling effect on the cooperation that police provide when an additional test is requested. The statutory right to an independent test should be recognized "willingly and not reluctantly" by the police. *People v. Underwood*, 153 Mich.App. 598, 396 N.W.2d 443, 444 (1986); *Dressler*, 433 N.W.2d at 550. It is therefore provident that we limit the duty of the police to facilitating the reasonable requests of the accused.[5] Defendant therefore retained absolute responsibility for adequately and properly developing her own defense, despite the "assistance" provided by the police.

### CONCLUSION

Defendant was personally responsible for obtaining any independent, potentially exculpatory test permitted by law. Defendant was given a reasonable opportunity by the police to obtain an independent test. The police were not responsible for her unilateral failure to obtain such a test. Nor were the police required to provide defendant with advice as to how to perform or obtain an independent test. We therefore reverse the suppression order and direct the trial court on remand to admit the

---

5. That is not to say that a defendant may not claim that the police, in order to gain an advantage over an accused at trial, intentionally misled the accused into failing to obtain an independent test or intentionally caused the accused to take actions detrimental to the validity of such a test. The trial court expressly found in the present case, however, that there was no bad faith on the part of the police in providing the bottle to defendant.

results of the breath test conducted by the police.

JACKSON and RUSSON, JJ., concur.