SALT LAKE CITY, Plaintiff and Appellee,

v.

Tony EMERSON, Defendant and Appellant.

No. 920744–CA.

Court of Appeals of Utah.

Oct. 8, 1993.

J. Franklin Allred, Salt Lake City, for defendant and appellant.

Todd J. Godfrey, Salt Lake City, for plaintiff and appellee.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

ORME, Judge:

Defendant Tony Emerson, with our prior leave, appeals the interlocutory order denying his motion to suppress evidence of a breathalyzer test sought to be used in his prosecution for driving under the influence of alcohol, a Class B Misdemeanor, in violation of Salt Lake City Code § 12–24–100 (1987). We affirm the trial court's decision on the narrow question of admissibility of the evidence at defendant's pending trial.

## FACTS

On May 15, 1992, defendant was involved in a traffic accident, as a result of which he was taken into custody for suspicion of driving under the influence of alcohol. Salt Lake City Police Officer Bret Hatch then transported defendant to the police station to administer a breath test. Once there, Officer Hatch wrote his police identification number, the breathalyzer instrument number, and defendant's name at the top of the "Intoxilizer 5000 Operational Checklist." Officer Hatch then wrote "14:49" beside step one of the checklist to reflect when the machine was turned on. After the machine warmed up for the requisite twenty minutes, Officer Hatch gave defendant a breath test, marking the checklist as the various steps were completed.

However, due to the fact that defendant failed to blow properly into the mouthpiece, the breathalyzer did not register a sufficient sample for analysis. Consequently, Officer Hatch had to readminister the test. Once again, defendant failed to provide an adequate sample. On the third attempt, defendant finally blew consistently enough to allow the breathalyzer to make an analysis. The analysis disclosed that defendant had a blood alcohol level of .292. Officer Hatch wrote the time of 15:18 on the final step of the checklist, and placed it and the third test record card in an evidence envelope. Officer Hatch did not complete a sep-

arate written checklist for each of the three test attempts, nor did he retain the record cards from the first two invalid tests, which he testified were devoid of any data.

Defendant raises two issues on appeal. First, defendant asserts that Officer Hatch's failure to complete a separate checklist for the third breath test renders the test result inadmissible. Second, defendant argues that Officer Hatch's failure to retain the first two test cards requires the exclusion of the card memorializing the final test result.

## STANDARD OF REVIEW

In reviewing the denial of a motion to suppress, "this court will not disturb the trial court's findings of fact unless they are clearly erroneous." *State v. Naisbitt,* 827 P.2d 969, 971 (Utah App.1992). However, whether a statute prevents the admission of evidence depends on its interpretation, and the "trial court's interpretation of a statute presents a question of law." *Ward v. Richfield City,* 798 P.2d 757, 759 (Utah 1990). "We accord a lower court's statutory interpretations no particular deference but assess them for correctness; as we do any other conclusion of law." *State ex rel. Div. of Consumer Protection v. Rio Vista Oil, Ltd.,* 786 P.2d 1343, 1347 (Utah 1990). *See also Ward,* 798 P.2d at 759; *State v. Gonzalez,* 822 P.2d 1214, 1217 (Utah App. 1991) ("we review the trial court's ruling as to admissibility of evidence under a correctness standard").

## ANALYSIS

At issue is under what circumstances breathalyzer tests may be admitted, without the usual foundational and expert testimony, to establish that a defendant was driving under the influence of alcohol. Utah law specifically provides that breath test results are presumptively admissible and accurate if certain standards and safeguards are met. According to the Utah Code:

(1) The Commissioner of the Department of Public Safety shall establish standards for the administration and interpretation of chemical analysis of a person's breath, including standards of training.

(2) In any action or proceeding in which it is material to prove that a person was operating or in actual physical control of a vehicle while under the influence of alcohol or any drug or operating with a blood or breath alcohol content statutorily prohibited, documents offered as memoranda or records of acts, conditions, or events to prove that the analysis was made and the instrument used was accurate, according to standards established in Subsection (1), are admissible if:

(a) the judge finds that they were made in the regular course of the investigation at or about the time of the act, condition, or event; and

(b) the source of information from which made and the method and circumstances of their preparation indicate their trustworthiness.

Utah Code Ann. § 41–6–44.3 (1988). The Code further provides that if the trial court finds both that the standards were met and the additional safeguards have been shown, "there is a presumption that the test results are valid and further foundation for introduction of the evidence is unnecessary." *Id.* § 41–6–44.3(3). While the statute is not a model of clarity, it appears to create a dual presumption of both accuracy *and* admissibility. This dual presumption is triggered by meeting the standards promulgated by the Department of Public Safety authorized in subsection (1) and the judicial safeguards articulated in subsection (2).

The Utah Supreme Court considered the evidentiary effect of section 41–6–44.3 in *Murray City v. Hall,* 663 P.2d 1314 (Utah 1983). In *Hall,* defendant challenged the admissibility of a breath test, the foundation for which was based on affidavits concerning the breathalyzer's proper maintenance and functioning. *Id.* at 1319–20. According to the Court, section 41–6–44.3 was intended "to relieve the State of Utah and other governmental entities of the financial burden of calling as a witness in every DUI case the public officer responsible for testing the accuracy of the breatha-

lyzer equipment." *Id.* Accordingly, the Court held that "so long as there is compliance with the mandates of the statute, namely, contemporaneous preparation in accordance with established standards, in the regular course of the officer's duties, and indications of trustworthiness, the affidavits regarding the maintenance of a breathalyzer machine are admissible." *Id.* at 1321. In addition, the Court noted that such "affidavits establish a rebuttable presumption that the breathalyzer machine was functioning properly." *Id.*

Defendant argues not only that the prosecution in this case has failed to satisfy the requirements for establishing the statutory presumption, but that such failure makes the breath test evidence wholly inadmissible. Defendant claims that the breath test results fail to meet the standards promulgated by the Department of Public Safety as required by section 41–6–44.3(2), therefore necessitating suppression.

Pursuant to the authority granted in subsection (1) of section 41–6–44.3, the Department of Public Safety promulgated Rule 735–500–6, entitled "Program Certification." [1] Utah Admin.Code R735–500–6 (1991). This rule requires that for a breath testing program to be certified, it must meet certain requirements. One of the listed requirements is that "[w]ritten checklists, outlining the method of properly performing tests shall be available at each location where tests are given." *Id.* R735–500–6(D)(2). The rule also requires that "[t]est record cards used in conjunction with breath testing shall be available at

each location where tests are given." *Id.* Finally, the rule notes that "[b]oth the checklist and test record card, after completion of a test *should* be retained by the operator." *Id.* (emphasis added). It does not, however, mandate that the checklist and test record card be retained, and in fact the language of the rule was changed from "shall" in a prior version of the rule to "should" in the current rule. *See* Utah Admin.Code R735–500–1(A)(2) (1988).

### A. Failure To Complete A Separate Checklist

■ Defendant argues that Officer Hatch's failure to complete a separate checklist for the third breath test violates the standards of the Department of Public Safety, therefore rendering the test result inadmissible. We disagree.

First, Rule 735–500–6(D) establishes the criteria for certification of a breath testing program, not the requirements for obtaining a presumptively valid and admissible breath test result. Utah Admin.Code R735–500–6(D) (1991). Second, the rule itself states only that a checklist shall be available, not that manually checking off each step in the testing process is required for admission of the breath test. *Id.* R735–500–6(D)(2). Even if the Rule were construed to require such a procedure as a guaranty that proper test protocol was followed, Officer Hatch actually completed a written checklist, the final step of which requires the operator to turn off the instrument and record the time when the test has been completed. [2] Officer Hatch recorded

---

**1.** At the time of defendant's arrest, the breath testing regulations promulgated by the Department of Public Safety were found in Utah Administrative Code R735–500. In the current version of the Administrative Code, the regulations are found in Utah Administrative Code R714–500 (1993).

**2.** The Intoxilizer 5000 Operational Checklist is basically a roadmap to operating the machine. It contains eight rather straightforward steps and reads as follows:

  1. RED POWER SWITCH ON, INSTRUMENT READS "PUSH BUTTON TO START TEST—TIME—" ETC.
  2. PUSH GREEN START BUTTON.

3. INSERT CARD. (INSTRUMENT WILL AUTOMATICALLY GO THRU AIRBLANK, 3 INTERNAL CALIBRATIONS, AND ANOTHER AIRBLANK).
4. INSERT STERILE MOUTHPIECE INTO BREATH–HOSE, INSTRUMENT WILL READ "PLEASE BLOW/R INTO MOUTH–PIECE UNTIL TONE STOPS, PLEASE BLOW/R".
5. OBTAIN BREATH SAMPLE, HAVE SUBJECT BLOW INTO MOUTHPIECE/BREATH–HOSE.
6. REMOVE MOUTHPIECE, RETURN BREATH–HOSE TO BRACKET. (INSTRUMENT WILL GO THRU AUTOMATIC AIRBLANK, AND PRINT RESULTS ON TEST RECORD CARD).
7. RETRIEVE CARD UPON COMPLETION OF PRINTOUT.

the time when the breathalyzer finally received a sufficient test sample and generated a result. He also testified that although he did not manually prepare a separate checklist for each test, he did follow the necessary steps on the list. Defendant provided no evidence to the contrary. Accordingly, we hold that Officer Hatch's failure to generate a separate checklist form for each test attempt does not violate the standards promulgated by the Department of Public Safety.

■ However, even if the failure to complete a separate checklist for the third test is deemed to violate the administrative standards, it does not follow that suppression is in order. We reject defendant's argument that any deviation from the standards established by the Department of Public Safety should result in outright suppression of the test results under section 41–6–44.3. While full compliance with the standards, coupled with a finding as to the additional safeguards described in the statute, creates a presumption of validity and establishes the evidence's foundation, failure to fully comply with such standards does not necessarily destroy the admissibility of the breath test evidence. It simply means that the foundation and validity of the evidence may not be presumed, but rather that they will have to be established in order for the evidence to be admitted. For example, in the case of a failure to prepare a written checklist, the operator of the breath test could testify to the procedure employed.

The Alaska Supreme Court has reached the same result. *Oveson v. Municipality of Anchorage,* 574 P.2d 801 (Alaska 1978). In *Oveson,* defendant challenged the admissibility of a breath test in his trial for driving under the influence of alcohol. *Id.* at 802. Defendant claimed that because the officer administering the test had failed to check one of the boxes on the checklist, the test results should have been suppressed. *Id.* at 803. Defendant based his argument on an Alaska statute requiring manual completion of a checklist. *Id.* at 804. However, the supreme court disagreed with defendant's claim, concluding that where the officer had testified that he had completed the required steps, failure to properly complete the checklist did not result in the test result's suppression, but only in the inapplicability of the statutory presumption of validity. *Id.* According to the court, "[a] clerical error by the test operator ought not to render the results inadmissible without a showing that the validity of the results is tainted. Were we to hold otherwise, we would be inviting a contest to find technical defects, regardless of their impact on the validity of the test results." *Id.* at 805.

The Utah Supreme Court has also held that failure to fully comply with bookkeeping requirements should not necessarily result in the test's inadmissibility. *In re Oaks,* 571 P.2d 1364, 1365 (Utah 1977). In *Oaks,* the defendant appealed his conviction for drunk driving, arguing that it was error to admit the breath test result where the administering officer failed to record the machine and ampoule number on the test card. *Id.* at 1364–65. The Court disagreed, finding that defendant's "smoke screen about the breathalyzer machine" was without validity. *Id.* at 1365. According to the Court, a "qualified technician can administer a test and then testify to his findings. The omission of the number of the machine or of the ampoule on the test card would not make the testimony of the expert incompetent." *Id.*

We likewise decline to elevate administrative bookkeeping requirements to the status of rules of evidence. Thus, even where the administering officer fails to fill out a checklist at all, the officer is still competent to testify as to the procedure employed in administering the test. Evidence of the passage of time between the test and the officer's recounting of the steps employed goes to the weight of the evidence, not its admissibility. Accordingly, it remains for the trier of fact to determine whether the test results, in light of

8. TURN OFF INSTRUMENT—RECORD TIME.

END OF TEST

the testimony and other evidence, adequately establish defendant's guilt.

### B. Failure To Retain The First And Second Test Cards

■ Defendant also argues that Officer Hatch's failure to retain the test cards from the first and second attempts violates the standards promulgated by the Department of Public Safety, and that therefore the results of the third attempt should be suppressed. However, as previously noted, failure to comply with the promulgated standards does not necessarily result in suppression of the evidence, but rather in denial of the statutory presumption of validity and admissibility. Utah Administrative Rule 735–500–6(D)(2) states that test cards *shall* be available at each location where tests are given, but only that they *should* be retained by the operator after completion of the test. Accordingly, the rule does not even mandate that the card be retained for a test sought to be admitted into evidence, let alone for attempted tests from which no result is obtained. Officer Hatch retained the test card which corresponded to the successful third test attempt, contemporaneously placing it in an envelope with the checklist. He sealed the envelope, which was then marked with his initials and identification number and the date. The prosecution later introduced the same envelope and its contents as evidence of defendant's inebriation. In sum, Officer Hatch complied with the Department's standards.

■ Defendant also claims that the evidence should not be admitted because the officer had a duty to retain the test cards from attempts one and two, as the cards may have contained exculpatory evidence. However, a police officer has no obligation to help a criminal suspect gather exculpatory evidence, unless expressly required by statute or there is a constitutional duty to assist in its recovery. *Provo City v. Werner*, 810 P.2d 469, 473 (Utah App.1991).

■ As noted above, there was no express statutory duty to retain the cards from invalid test attempts. Nevertheless, defendant argues that the United States Constitution creates such a duty. The Supreme Court considered the issue of a state's duty to preserve possibly exculpatory evidence in a DUI prosecution in *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). According to the Supreme Court, "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense." *Id.* at 488, 104 S.Ct. at 2534. In order tc meet such a materiality requirement, the "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. at 2534.

Defendant does not meet either of the *Trombetta* requirements. First, Officer Hatch testified that the test cards for attempted tests one and two showed the time of the test, but were otherwise completely devoid of data. This was because the machine did not measure defendant's blood alcohol level due to an insufficient breath sample. Therefore, there was no apparent exculpatory value in the test cards, and defendant has provided no evidence to the contrary. Second, defendant could have obtained an independent breath test if he doubted the accuracy of the breathalyzer employed by Officer Hatch. *See Provo City v. Werner*, 810 P.2d 469, 474 (Utah App.1991) (police may not deny defendant reasonable opportunity to obtain independent test). Therefore, defendant had the ability to obtain comparable evidence by other reasonably available means. *See Layton City v. Watson*, 733 P.2d 499, 500–02 (Utah 1987) (city not required to preserve sample of defendant's breath, where defendant could have obtained own sample). In sum, defendant fails to establish a constitutional duty to retain the test cards from the first and second invalid test attempts.

However, while neither the administrative rule nor the Constitution require that the City retain the results from tests one

and two, it must be concluded that the presumption of section 41–6–44.3 has not been established. According to the statute, there is no presumption of validity and admissibility unless there is both compliance with the administrative standards *and* a finding by the judge regarding the trustworthiness and regularity of the results. Utah Code Ann. § 41–6–44.3 (1988). Officer Hatch's failure to retain the cards from the first two test attempts at least undercuts the reliability of the third test. As the City conceded at oral argument, Officer Hatch should have retained the other two cards and placed them in the envelope with the checklist and the test results. Had he done so, the finding of trustworthiness required by section 41–6–44.3(2)(b) would be possible, and the statutory presumption would arise. Again, it does not follow that the third test card must be suppressed. Rather, as the City acknowledged at oral argument, Officer Hatch will need to testify at trial regarding the course and outcome of the first two test attempts in order to establish the trustworthiness of the third test.[3]

## CONCLUSION

The trial court properly denied defendant's motion to suppress the breath test results in his trial for driving under the influence. We hold that the officer administering the breathalyzer test complied with the standards promulgated by the Utah Department of Public Safety. However, we also conclude that the officer's failure to retain all of the test record cards precludes establishment of the statutory presumption of validity and admissibility of test number three, absent testimony or other evidence as to the outcome of tests one and two.

As this is an interlocutory appeal, we only decide the narrow issue of whether the trial court erred in denying defendant's motion to suppress. Based on the forego-

ing, we conclude that the trial court properly denied defendant's motion.

BENCH and BILLINGS, JJ., concur.

---

**3.** While the Utah Supreme Court has acknowledged that there is "'universal acceptance of the reliability of [breathalyzer] evidence,'" *Layton City v. Watson,* 733 P.2d 499, 500 (Utah 1987) (quoting *Murray City v. Hall,* 663 P.2d 1314, 1320 (Utah 1983)), it seems prudent to retain all test results, even those which are aborted or inconclusive, when the accompanying burden is so light.